UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-CR-91 |
| | ) | Judge Phillips |
| JOSEPH E. ARMSTRONG | ) | |

## MEMORANDUM AND ORDER

On August 8, 2016, defendant Joseph E. Armstrong was convicted by a jury of one count of filing a false tax return in violation of 26 U.S.C. § 7206(1) for failing to report and pay federal income tax on the profit he made on the sale of cigarette tax stamps in 2008. Pending before the Court are several objections to the Presentence Investigation Report ("PSR") [Docs. 62, 63]. Since the objections have been filed, the PSR has been revised twice [Docs. 67, 71] and some of the objections now appear to be moot. The Court has carefully considered the pending objections, the revised PSR, and the evidence and arguments presented on December 19, 2016.

    A.    Defendant's objection to paragraph 27 – the two-point enhancement for defendant's abuse of position of trust pursuant to United States Sentencing Guideline ("U.S.S.G.") §3B1.3 – is moot [Doc. 62 at pp. 3—4, ¶ 7, pp. 8—9]. This paragraph was removed in the second revised PSR and the government has indicated that it will not object to this revision of the PSR.

    B.    Defendant's objection to the sentencing range set forth in the PSR as beyond the three-year statutory maximum of 26 U.S.C. § 7206 is moot [Doc. 62 at pp. 4—5, ¶ 9,

pp. 14—16]. Both revised versions of the PSR reflect the restricted advisory Guideline range.

  C. Defendant has objected to PSR paragraph 73 which states that there are no factors warranting a variance outside the Guideline range [Doc. 62 at p. 5, ¶ 10, pp. 16—17]. Inasmuch as paragraph 73 does not affect the initial calculation of the defendant's advisory Guideline range, the Court views this objection as more of a sentencing argument rather than an appropriate basis for objection to the PSR. The defendant has filed a pending motion for downward departure and/or variance [Doc. 68] to address his asserted bases for a sentence outside the Guideline range and the Court will consider those arguments at sentencing. Accordingly, to the extent that this issue is an objection to the PSR, it is overruled.

  D. Defendant has objected to paragraph 63 of the PSR which states that the defendant is not eligible for probation because his Guideline range is in Zone D of the Sentencing Table [Doc. 62 at p. 5, ¶ 11, pp. 17—18]. Defendant contends that the correct calculation of his offense level would put him in the range that is eligible for probation. Further, defendant argues that the statute of conviction clearly contemplates that the imposition of a fine, alone, may be an appropriate punishment. Finally, defendant argues that he should be eligible for probation because of the nature of the offense of conviction, his personal history, and the collateral consequences of his conviction. As with the prior objection, paragraph 63 does not affect the initial calculation of the defendant's advisory Guideline range. The Court will consider all of the parties' arguments regarding an

2

appropriate sentence in accordance with the factors set forth in 18 U.S.C. § 3553(a) at the sentencing hearing. To the extent that this issue is an objection to the PSR, it is overruled.

E. The government's sole objection [Doc. 63] to the PSR identifying Aberrant Behavior as a basis for departure pursuant to USSG §5K2.20 is moot inasmuch as that paragraph has been removed from the PSR. However, this is one of the bases cited in the defendant's pending motion for downward departure and/or variance [Doc. 68] and it will be considered in that context at sentencing and pursuant to the factors set forth in 18 U.S.C. § 3553(a).

F. Calculation of Tax Loss

Defendant objects to the calculation of tax loss of $104,781.00 in paragraphs 15 and 17 and the finding of a base offense level of 16 [Doc. 62 at pp. 2—3, ¶¶ 4—6, 5—8; Doc. 68 at pp. 3—6].[1] Government's trial exhibit 68, Internal Revenue Service ("IRS") Form 4549, contains the government's calculation of the tax loss on which the PSR determination is made. At the December 19, 2016 hearing, the government presented the testimony of IRS Agent Cindy West, who also testified at trial, to affirm that the calculations in Form 4549 correctly state the amount of tax loss. The defendant presented the testimony and expert witness report of Marshall H. Hamilton, a Certified Public Accountant, who opined that Form 4549 does not correctly calculate the amount of tax loss [Doc. 73, Exs. 1, 2].

Defendant relies on U.S.S.G. §2T1.1(c)(1), Note A, which states that "[i]f the offense involved filing a tax return in which gross income was underreported, the tax loss

---

[1] U.S.S.G. §2T4.1 provides that a tax loss of more than $100,000 has a base offense level of 16. A tax loss of more than $40,000, but less than $100,000, has a base offense level of 14.

3

shall be treated as equal to 28% of the unreported gross income ... *unless a more accurate determination of the tax loss can be made*" (emphasis added). Defendant does not dispute that he did not report $321,853.00 in 2008 as income from the tobacco tax stamp profits. Although defendant's briefing does not suggest what the appropriate tax loss should be, defense counsel noted at the December 19, 2016 hearing that application of the 28% "presumptive" tax rate to $321,853.00 would equal a tax loss of $90,118.84.

Mr. Hamilton opined that the calculation in Form 4549 fails to account for the loan origination costs and the UCC-1 filing fee defendant incurred in repaying the BankEast loan that was used to purchase the cigarette tax stamps. Including those costs would result in an adjusted gross profit of $319,038.00. Further, Mr. Hamilton opined that Form 4549 failed to correctly adjust the sales tax deduction for the increase in defendant's income, a point that IRS Agent West conceded. Finally, and most critically, Mr. Hamilton opined that Form 4549 failed to correctly treat the interest paid on the loan as investment interest and therefore as an itemized deduction, rather than a miscellaneous itemized deduction. Mr. Hamilton opined that the correct amount of tax loss is $99,943.00, which the defendant urges the Court to adopt as the amount of tax loss.

In response, the government contends that the tax loss calculation of $104,781 by IRS Agent Cindy West took into consideration all appropriate deductions [Doc. 69 at pp. 9—10]. Ms. West testified that the loan interest would not be treated as investment expense because, per Tennessee law, only a licensed cigarette stamper could purchase cigarette tax stamps. Because defendant was able to do so only because of his position as a state

4

representative, she opines that the income was not a legitimate investment and therefore the interest was not deductible as an investment expense.

The Court first notes that the government bears the burden of establishing the amount of tax loss by a preponderance of the evidence standard. *United States v. Daulton*, 266 F. App'x 381, 388 (6th Cir. 2008). The key to this dispute is whether the interest paid on the loan should be treated as a miscellaneous personal deduction subject to a limitation of 2% of adjusted gross income under I.R.C. § 67, as the government contends, or whether the interest should be treated as investment interest under I.R.C. § 163(d)(1), as the defendant contends.[2] The Court further observes that neither party has cited to any statutory, regulatory, or other law or guidance by which this determination should be made. Mr. Hamilton testified that investment interest under I.R.C. § 163 is "interest on a loan used to secure an investment property."[3] He further explained that the loan interest should not be considered a miscellaneous itemized deduction as Ms. West opined because I.R.C. § 67(b)(1) explains that miscellaneous itemized deductions do not include interest.[4] Neither Ms. West nor the government cited any I.R.C. provision or other authority for the position that defendant's purchase of tax stamps was not a legitimate investment because the investment opportunity was not generally available to the public.

---

[2] The parties agree that if Mr. Hamilton's suggested corrections to the sales tax deduction and the inclusion of the loan closing costs were the only changes made to the Form 4549 calculation, the tax loss would still be over $100,000.

[3] I.R.C. § 163(d)(3)(A) defines "investment interest" as "interest allowable as a deduction under this chapter … which is paid or accrued on indebtedness properly allocable to property held for investment."

[4] I.R.C. § 67(b)(1) states that "'miscellaneous itemized deductions' means the itemized deductions other than the deduction under section 163 (relating to interest)."

5

Based on the evidence presented at trial and the parties' stipulations [Gov. Ex. 1], it is undisputed that only a licensed cigarette stamper can legally purchase cigarette tax stamps in Tennessee. It is also undisputed that the defendant is not a licensed cigarette tax stamper. However, it is also undisputed that defendant's purchase of the cigarette tax stamps from Tru Wholesale and subsequent resale was not illegal. The Court finds that both Mr. Hamilton and Ms. West are credible, competent witnesses on this subject and that they both have reasonable bases for their opinions. In the absence of other evidence or any persuasive authority, the Court finds that the government has not carried the burden of proof that the amount of tax loss is $104,781.00. Therefore, the Court accepts the opinion of Mr. Hamilton that the amount of tax loss is $99,943.00, the defendant's objection as to the amount of tax loss is sustained, and the PSR will be revised to reflect defendant's base offense level of 14 pursuant to U.S.S.G. §2T4.1.

G. Obstruction of Justice

Defendant objects to the 2-level enhancement for obstruction of justice in paragraphs 21 and 28 pursuant to U.S.S.G. §3C1.1 [Doc. 62 at p. 4, ¶ 8]. Paragraph 21 of the PSR states that the defendant willfully obstructed or impeded the administration of justice when he testified that he invoked the "Rule" to indicate he had a conflict with House Bill 2345, the cigarette tax stamp bill, and that he "provided materially false information to the Judge and jury in this case." The U.S. Probation Office's response to this objection states that the "rule" of Tenn. Code Ann. § 2-10-127(d)(1) does not indicate that a legislator might have a financial interest in a matter up for vote. "It simply identifies a Legislator's

6

potential conflict due to a relationship with a lobbyist. Had the jury believed the testimony related to invoking the rule, it might have impacted their decision" [Doc. 66].

U.S.S.G. § 3C1.1 states that a 2-level upward adjustment may be applied if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

Application note 2 states that the enhancement should not be applied because the defendant denied his guilt, refused to admit guilt, or refused to enter a plea. Application note 2 also cautions that "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory, and thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." The PSR relies on Application note 4(F) "providing materially false information to a judge or magistrate judge" as the basis of this enhancement. "Material" evidence is defined as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. §3C1.1, app. note 6.

First, it is worth noting that it is the government's burden to prove an obstruction of justice enhancement by a preponderance of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002). The application of an obstruction of justice enhancement requires the district court to "1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (quoting

7

*United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002)). The elements of perjury are "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Finally, in considering an obstruction of justice enhancement, the court must evaluate the defendant's testimony in the light most favorable to the defendant. *United States v. Hendrickson*, 460 F. App'x 516, 519 (6th Cir. 2012).

Tenn. Code Ann. § 2-10-127(d)(1), the section relied upon by the government at trial, states as follows:

> A person subject to the prohibition in § 2-10-123(a) shall declare before taking a legislative or administrative action on any matter: "It may be considered that I have a degree of personal interest in the subject matter of this bill or action, but I declare that my argument and my ultimate vote answer only to my conscience and to my obligation to my constituents and the citizens of the state of Tennessee," if: (A) the person is employed by a business entity that employs a lobbyist, and such lobbyist is employed by the business entity to lobby such legislative or administrative action; or (B) the matter is lobbied by a sibling, spouse or child of the person subject to the prohibition in § 2-10-123(a).[5]

In a committee meeting on the cigarette tax bill, the audio and video of which were played at trial, Mr. Armstrong can be seen and heard saying "127(d)." On direct examination,

---

[5]The defendant suggests that Tenn. Code Ann. § 2-10-127(d)(2), which was not discussed at trial, could also potentially cover additional conflicts of interest [Doc. 68 at p. 7]. Subsection 127(d)(2) provides that "[t]he person may alternatively state that the person is declaring a potential conflict of interest, in accordance with this section, or indicate the conflict via the voting board in the chamber of the house of representatives or the senate." However, as defendant concedes, this section is styled regarding "siblings, spouses or children who are lobbyists" and further, provision 127(d)(2) limits the disclosure of potential conflicts of interest to those "in accordance with this section." It does not appear that this disclosure would relate to financial interests in the pending legislation.

8

defendant testified that he disclosed a conflict of interest in the committee meeting, but he could not recall what number he cited because the numbers change every year. He further explained that he cited to the House rules, not to the Tennessee statute. On cross-examination and after replaying the video, Mr. Armstrong agreed that he said "127(d)" in the committee meeting and he admitted that his wife is a lobbyist. However, he insisted that his disclosure was of his financial interest in the bill and not the fact that his wife was a lobbyist. On re-direct, he clarified that the House does not have separate ethics rules and he clearly testified that his "intent was to disclose that I had a conflict on the tobacco tax … [n]othing referring to my wife."

The government argues that defendant's assertion of publicly disclosing his conflict of interest was shown to be false on cross-examination and therefore the obstruction of justice enhancement is appropriate [Doc. 69 at pp. 11—12]. The government contends that defendant was not merely mistaken in stating that he had disclosed his conflict, but that he deliberately sought to mislead the jury. This evidence was presented in support of the government's overarching theory that the defendant did not want anyone to know that he would be benefitting financially from the tobacco stamp tax increase. In other words, defendant claims he disclosed his financial interest in the bill, but in reality he was merely disclosing that his wife works as a lobbyist.

The defendant argues that he testified as to his personal belief and that the government has not presented evidence that his statement was more than a mistake or a result of confusion [Doc. 62 at pp. 12—14]. The defendant also notes that there is no proof that this testimony impacted the jury in any way as it relates to the offense of conviction.

9

The defendant claims that he was mistaken either in his recollection of his disclosure or in his citation to the wrong rule [Doc. 68 at pp. 6—9]. Thus, he argues that his testimony did not rise to the level of perjurious testimony or a willful intent to mislead or obstruct.

While the government's theory – that defendant knew he was not disclosing a financial conflict of interest – has some sway, the government's conclusion requires an inference that the "127(d)" cited by the defendant is a reference to Tenn. Code Ann. § 2-10-127(d)(1) rather than some other rule. On balance, the Court finds that the defendant's testimony, when considered in the light most favorable to him, does not clearly rise to the level of "false testimony concerning a material matter with the willful intent to provide false testimony." Defendant clearly testified that he intended to disclose his conflict of interest on the tax stamp bill and that his disclosure had nothing to do with his wife. He also testified that the numbers of the rules in the House changed from time to time and then clarified that the House does not have separate ethics rules. The Court need not determine whether defendant's citation to "127(d)" was a mistake or confusion, but instead need only conclude that his testimony as to this disclosure was not willfully false. Accordingly, the Court finds that the obstruction of justice enhancement pursuant to U.S.S.G. §3C1.1 is not applicable and the defendant's objection as to this enhancement is sustained.

In conclusion, the Court finds as follows:

1. Defendant's objection to paragraph 27 of the PSR, the two-point enhancement for defendant's abuse of position of trust pursuant to U.S.S.G. §3B1.3, is **OVERRULED as moot**.

10

2. Defendant's objection to the sentencing range set forth in the PSR as beyond the three-year statutory maximum of 26 U.S.C. § 7206 is **OVERRULED as moot**.

3. Defendant's objection to PSR paragraph 73 which states that there are no factors warranting a variance outside the Guideline range is **OVERRULED**. However, the Court will consider the defendant's arguments regarding departure and/or variance in conjunction with the pending motion [Doc. 68] and the factors set forth in 18 U.S.C. § 3553(a) at the sentencing hearing.

4. Defendant's objection to paragraph 63 of the PSR which states that the defendant is not eligible for probation because his Guideline range is in Zone D of the Sentencing Table is **OVERRULED**. The Court will consider the defendant's arguments regarding an appropriate sentence and the factors set forth in 18 U.S.C. § 3553(a) at the sentencing hearing.

5. The government's sole objection [Doc. 63] to the PSR identifying Aberrant Behavior as a basis for departure pursuant to U.S.S.G. §5K2.20 is **OVERRULED as moot** inasmuch as that paragraph has been removed from the PSR. However, this is one of the bases cited in the defendant's pending motion for downward departure and/or variance [Doc. 68] and it will be considered in that context at sentencing and pursuant to the factors set forth in 18 U.S.C. § 3553(a).

6. The Court finds that the amount of tax loss is $99,943.00, the defendant's objection as to the amount of tax loss is **SUSTAINED**, and paragraphs 17 and 24 of the PSR will be revised to reflect the amount of tax loss and the defendant's base offense level of 14 pursuant to U.S.S.G. §2T4.1.

7. The defendant's objection to the obstruction of justice enhancement in paragraphs 21 and 28 is **SUSTAINED** and the PSR will be revised to remove the two points for this enhancement.

The Court will take up the pending motion for downward departure and/or variance [Doc. 68] and the remaining sentencing arguments at the sentencing hearing on January 25, 2017, at 10:00 a.m.

IT IS SO ORDERED.

   s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE